**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 11-CV-01658-WJM-MEH

R.E. MONKS CONSTRUCTION CO., LLC,
an Arizona limited liability company, on behalf of,
FISHER SAND & GRAVEL CO., an Arizona Corp., d/b/a DBA Arizona Drilling & Blasting,

Plaintiff,

v.

TELLURIDE REGIONAL AIRPORT AUTHORITY,
a political subdivision of the State of Colorado,

Defendant.

_____

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**
**AND MOTION TO STAY DISCOVERY**
_____

In this civil action, Plaintiff R.E. Monks Construction Company, LLC ("R.E. Monks"), on behalf of Arizona Drilling & Blasting ("AD&B"), brings claims of breach of contract and unjust enrichment under Colorado law against Defendant Telluride Regional Airport Authority ("TRAA") alleging that Plaintiff was damaged when it suffered increased costs due to a differing site condition while building a runway for the TRAA. (ECF No. 1.)  Before the Court are Defendant's Motion to Dismiss ("Motion") (ECF No. 6) and Motion to Stay Discovery and Extension of Deadlines (ECF No. 34).

For the reasons set forth below, the Motions are denied.

**I.  BACKGROUND**

On June 24, 2011, Plaintiff filed its Complaint bringing claims of breach of

contract and unjust enrichment against Defendant.  (Compl. (ECF No. 1.))  Plaintiff R.E. Monks, a general contractor, alleges that the TRAA, a political division of the state of Colorado, failed to pay Plaintiff additional costs accumulated over the amount bid and accepted for the construction of an airport runway.  (*Id*. ¶¶ 1, 2, 10-24.)  AD&B, on whose behalf R.E. Monks brings this action, is an Arizona corporation that R.E. Monks sub-contracted to perform the drilling and blasting operations of the airport runway.  (*Id*. ¶¶ 3, 11.)  Plaintiff alleges that, despite assurances from Defendant's expert that the runway construction would not encounter wet conditions, AD&B unexpectedly encountered such wet conditions during its drilling and blasting operations (the "wet hole blasting claim"), resulting in additional work and costs to Plaintiff.  (*Id*. ¶¶ 13-19.)

On July 26, 2011, Defendant filed its Motion to Dismiss requesting that the Court dismiss all claims: (1) for failure to join a necessary and indispensable party pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19; and (2) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Motion (ECF No. 6.))  Specifically, Defendant argues that AD&B was a required party without whom the litigation cannot proceed, and that because AD&B's interests are adverse to R.E. Monks' interests, AD&B must be joined as a Defendant, which would destroy diversity jurisdiction.  (*Id*. at 2-6.)

On August 16, 2011, Plaintiff filed its Response in Opposition to Defendant's Motion to Dismiss.  (Response (ECF No. 7.))  In its Response, Plaintiff asserts that AD&B is not an indispensable party to this action because prior to filing suit, R.E. Monks and AD&B entered into a Liquidation Agreement (the "Liquidation Agreement"), described in detail below, wherein AD&B agreed not to sue R.E. Monks for costs

associated with the wet hole blasting claim in exchange for R.E. Monks agreeing to allow AD&B to bring the claim against TRAA in the name of R.E. Monks.  (*Id*. at 4-5.)

On September 6, 2011, Defendant filed its Reply to Plaintiff's Response.  (Reply (ECF No. 13.))  In its Reply, Defendant, in light of the Liquidation Agreement, withdrew its argument that AD&B was a required party, but argues that: (1) provisions in the Liquidation Agreement are unenforceable against TRAA because of the prohibition against assignment in the TRAA/R.E. Monks contract; and (2) any claim R.E. Monks might have had against TRAA has been extinguished as a consequence of AD&B releasing R.E. Monks from any liability to it.  (*Id*. at 5-9.)  With the Court's permission, Plaintiff filed a Sur-Reply on October 10, 2011.  (ECF No. 20.)

On March 28, 2012, Defendant filed a Motion to Stay Discovery and Extension of Deadlines requesting the Court to stay discovery until after Defendant's Motion to Dismiss has been decided.  (ECF No. 34.)  On March 29, 2012, Plaintiff filed its Response in Opposition to Defendant's Motion to Stay Discovery (ECF No. 25), and Defendant filed its Reply in Support of its Motion to Stay Discovery (ECF No. 36).

These Motions are now ripe for resolution.

## II.  LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the

plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

The concept of "plausibility" at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true. *See Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192-93 (10th Cir. 2009). The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## III.  ANALYSIS

Before the Court are: (1) Defendant's Motion to Dismiss, and (2) Defendant's Motion to Stay Discovery and Extension of Deadlines. The Court will address each in turn below.

**A.     Motion to Dismiss**

Defendant argues that the Court should grant its Motion to Dismiss because provisions in the Liquidation Agreement are unenforceable, and because any claim R.E. Monks might have had against the TRAA has been extinguished. Defendant also argues that Plaintiff has failed to state claims for breach of contract and unjust enrichment.

### 1. The Liquidation Agreement

Defendant argues that Plaintiff's claims should be dismissed because: (1) provisions in the AD&B/R.E. Monks Liquidation Agreement are unenforceable against TRAA because of the prohibition against assignment in the TRAA/R.E. Monks contract, and (2) any claim R.E. Monks might have had against TRAA has been extinguished as a consequence of AD&B releasing R.E. Monks from any liability to it. (Reply at 5-9.) Plaintiff refutes these arguments.

#### a. Pass-Through Claim vs. Assignments

Prior to commencing this litigation, R.E. Monks and AD&B entered into a Liquidation Agreement wherein they agreed to resolve any underlying wet hole blasting claim as between R.E. Monks and AD&B. (Liquidation Agreement, attached to Response, Ex. E.) Generally, such liquidating agreements have three basic elements: (1) the imposition of liability upon a party for a third party's increased costs, thereby providing the first party with a basis for legal action against the party at fault, (2) a liquidation of liability in the amount of the first party's recovery against the party at fault, and (3) a provision for the pass-through of that recovery to the third party. *See North Moore Street Developers, LLC v. Meltzer/Mandl Architects, P.C.*, 23 A.D.3d 27, 31 (N.Y. App. Div. 2005); *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 610 (Tex. 2004) (citing Carl A. Calvert, *Pass Through Claims and Liquidation Agreements*, CONSTRUCTION LAWYER, Oct. 18, 1998, at 29; 3 BRUNER AND O'CONNER ON CONSTRUCTION LAW § 8:51 (2003)). Essentially, instead of one lawsuit between a subcontractor and general contractor, and another lawsuit between the general contractor and an owner, a

liquidation agreement with pass-through recovery provisions permits a general contractor to pursue its subcontractor's claims directly against the owner. *See Interstate Contracting Corp.*, 135 S.W.3d at 610 (internal citation omitted). Under such a liquidation agreement, the subcontractor releases all claims it may have against the general contractor in exchange for the general contractor's promise to pursue those claims against the owner and remit any recovery to the subcontractor. *Id*. (citing Henry R. Kates, *Note: Facilitating Subcontractors' Claims Against the Government Through the Prime Contractor as the Real Party In Interest*, 52 GEO. WASH. L. REV. 146, 154 (1983)). Thus, a contractor remains liable to the subcontractor, but only to the extent the contractor receives payment from the owner. *Id*.

Contractors bringing suit against the federal government have long been permitted to present subcontractors' claims based on pass-through arrangements, even though the no-privity rule would otherwise bar subcontractors from recovering directly against the government. *See, e.g., Interstate Contracting Corp. v. City of Dallas, Tex.*, 320 F.3d 539, 543 (5th Cir. 2003). As long as the general contractor remains liable to the subcontractor for the subcontractor's damages, courts have generally upheld such pass-through arrangements. *See Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1251 (10th Cir. 1999); *W.G. Yates & Sons Constr. Co., Inc. v. Caldera*, 192 F.3d 987, 991 (Fed. Cir. 1999). Federal courts have construed these pass-through agreements as giving the general contractor standing to pass the subcontractor's claims through to the government. *See Interstate Contracting Corp.*, 135 S.W.3d at 610 (*citing W.G. Yates*, 192 F.3d at 991)).

Numerous states have also expressly or implicitly recognized pass-through claims.  "Otherwise, the owner could receive a windfall because the subcontractor lacked privity with the owner and the contractor lacked standing to sue the owner for damages suffered by the subcontractor." *Interstate Contracting Corp.*, 135 S.W.3d at 615 (collecting cases).

As the Texas Supreme Court noted:

> The pass-through claim [resulting from a Liquidation Agreement] certainly does not increase litigation and even tends to reduce it by rendering unnecessary a suit between the subcontractor and the contractor for the damages caused by the owner.  Furthermore, in a pass-through situation, any settlement by the owner is a full and final settlement because the subcontractor promises to release the contractor from liability to the extent the contractor presents the subcontractor's claim and renders any recovery to the subcontractor.  Pass-through claims also avoid the problem presented when one defendant settles while the other remains partially liable, necessitating an additional settlement or further litigation.

*Id.* at 616.

Defendant argues that the Liquidation Agreement here violated the prohibition against assignment contained in the TRAA/R.E. Monks contract.  The Court disagrees, and specifically finds that the Liquidation Agreement does not impermissibly assign R.E. Monks' claim to AD&B.

An "effective assignment is one by which the assignor's right to performance by the obligor is extinguished and the assignee acquires a right to such performance." *Restatement of Contracts*, Section 150, and 3 Williston on Contracts, Section 404, n. 2, p. 3 (3rd Ed. 1960).  Here, RE. Monks' right to performance from the TRAA has not been extinguished.  Indeed, the Liquidation Agreement specifically states that it does not constitute "a release or reduction of the Wet Hole Blasting Claim against the Owner

7

[TRAA]." (Liquidation Agreement ¶ 6.) It states that "[t]he Wet Hole Blasting Claim shall, in all respects, remain a viable legal and equitable claim against the Owner [TRAA]." (*Id.*) Further, the Liquidation Agreement states that R.E. Monks grants AD&B "the authority to prosecute, litigate and/or negotiate, settle or compromise the Wet Hole Blasting Claim in the name of Monks." (*Id.* ¶ 1.) In exchange for R.E. Monks granting AD&B the right to prosecute its claim against Defendant in the name of R. E. Monks, AD&B covenanted to not sue R.E. Monks for increased costs resulting for the alleged wet blasting conditions. (*Id.* ¶ 8.) Also pursuant to the Liquidation Agreement, R.E. Monks is required to "pass-through" any financial recovery in that must "pay any recovered amounts, less the amount of any taxes or bond payments, to AD&B." (*Id.* ¶ 4.)

If the Liquidation Agreement was an assignment of rights, any amounts recovered in this matter would have to be paid directly by TRAA to AD&B, a party with whom TRAA has no direct contractual relationship. *See Sterling Consulting Corp. v. Credit Managers Ass'n of Cal.*, 05-cv-01573, 2006 WL 3641009, at *8 (D. Colo. Dec. 12, 2006). However, since the Liquidation Agreement specifically describes the pass-through arrangement between the parties, it does not contain an impermissible assignment of contractual rights. *See Interstate Contracting Corp.*, 135 S.W.3d at 616-617. The Court holds, therefore, that the Liquidation Agreement is enforceable in this case.

### b. The *Severin* Doctrine

Defendant next assets that, under the "*Severin* Doctrine," any claim "R.E. Monks

might have had against TRAA has been nullified and extinguished as a consequence of AD&B releasing Monks from any liability to it." (Reply at 2.)

Under the "*Severin* Doctrine," a contractor suing on behalf of its subcontractor cannot recover from the government if the subcontract contains a clause that completely exculpates the contractor from liability. *See Severin v. U.S.,* 99 Ct. Cl. 435, 442-44 (Ct. Cl. 1943). Thus, a contractor can be barred from pursuing a claim on its subcontractor's behalf because the exculpatory clause extinguishes any claim the contractor could have asserted for damages resulting from the government's alleged breach of contract. *Id*.

Federal courts, however, have expressly limited the *Severin* doctrine. *See Morrison Knudsen*, 175 F.3d at 1251 ("[c]ourts have strictly limited the *Severin* doctrine, out of reluctance to leave [subcontractors] with valid claims out in the cold"); *E.R. Mitchell Constr. Co. v. Danzig*, 175 F.3d 1369, 1371 (Fed. Cir. 1999) (internal quotation omitted) ("application of the *Severin* doctrine has been narrowly construed"). "In practically every case where [the *Severin* Doctrine's] application has been urged, an exception has been created or recognized." *Mitsui & Co., Inc. v. Puerto Rico Water Res. Auth.*, 528 F. Supp. 768, 781 (D.P.R. 1981).

Moreover, in order to preclude recovery by a subcontractor under the *Severin* Doctrine, there must be an "iron-bound release or contract provision immunizing the prime contractor completely from any liability to the sub [contractor]." *Id.* at 782 (internal quotation omitted); *see also Morrison Knudsen*, 175 F.3d at 1251 ("Courts have applied *Severin* only if the government proves that a sub [contractor] has

executed an ironclad, unconditional release of a prime [contractor].").  Such an "iron-bound release" must also be expressly stated.  *Mitsui*, 528 F. Supp. at 781.

The Court finds that the *Serverin* Doctrine is inapplicable here because the Liquidity Agreement between R.E. Monks and AD&B contains no "iron-bound" release absolving R.E. Monks from liability.  Under the Liquidation Agreement, R.E. Monks agreed to pass-through any recovery to AD&B after pursuing its own claim against the TRAA. (Liquidation Agreement ¶ 4.)  The Liquidation Agreement contains a "general release, final waiver of lien, and if appropriate obtain from its surety a consent to final payment" upon receipt of any funds recovered by R.E. Monks for AD&B.  (*Id*. ¶ 11.)  As such, the *Severin* Doctrine does not extinguish Plaintiff's claims.  *See Metric Constructors, Inc. v. U.S.,* 314 F.3d 578 (Fed. Cir. 2002) (holding that a general contractor could bring a suit against the government for damages suffered by its subcontractor because there was no "iron-clad release" sufficient to trigger application of the *Severin* doctrine).

### c.  The Real Party In Interest

Defendant also argues that Plaintiff's claims must be dismissed because AD&B, not R.E. Monks, is the real party in interest. (Reply at 8-9.)  Pursuant to Rule 17(a) of the Federal Rules of Civil Procedure, "every action shall be prosecuted in the name of the real party in interest."  Rule 17(a) "directs attention to whether plaintiff has a significant interest in the particular action he has instituted."  *Mitsui*, 528 F. Supp. at 776.  However, "[t]he action does not have to be brought by one who will ultimately benefit from the recovery."  *Id.*

The Court finds that R.E. Monks is a real party in interest for purposes of asserting the wet hole blasting claim against Defendant. While AD&B will ultimately benefit if any damages are recovered from Defendant, R.E. Monks also benefits since it has received a release of liability from AD&B. *Id*. Thus, it cannot be seriously disputed that R.E. Monks is a real party interest.

Accordingly, for the reasons stated above, Defendant's Motion to Dismiss Plaintiff's claims based on arguments that provisions in the Liquidation Agreement are unenforceable and that R.E. Monks' claims have been extinguished is denied.

### 2. Breach of Contract Claim

Defendant also argues that Plaintiff has failed to state a claim for breach of contract because Plaintiff has not been damaged. (Motion at 10-11.)

To state a breach of contract claim under Colorado law, Plaintiff must sufficiently allege: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by a party to the contract; and (4) resulting damages to the plaintiff. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). The only prong Defendant challenges here is whether Plaintiff suffered damages as a result of the alleged breach.

Plaintiff's Complaint states that Defendant's refusal to pay for extra costs associated with the differing site condition resulted in damages to R.E. Monks in excess of $874,676.98. (Compl. ¶ 28.) Further, Plaintiff alleges that R.E. Monks was responsible for performing the drilling and blasting operations on the runway project and is entitled to be paid for such work. (*Id*. ¶¶ 9-11.) As such, the Court finds that

11

Plaintiff's allegations, for purposes of the Motion to Dismiss, sufficiently state that Plaintiff has suffered damages as a result of Defendant's breach of contract. Therefore, Defendant's Motion to Dismiss Plaintiff's breach of contract claim is denied.

### 3. Unjust Enrichment Claim

Finally, Defendant asserts that Plaintiff's unjust enrichment claim must be dismissed because such a claim cannot exist when Plaintiff's cause of action is governed by an express written contract. (Motion at 11-12.) In response, Plaintiff argues that it should be permitted to pursue its unjust enrichment claim at this early stage of the litigation because Defendant has denied that Plaintiff's claim for the cost overruns is covered by their written contract. (Response at 14-15.)

To state a claim for unjust enrichment, Plaintiff must allege that: (1) at plaintiff's expense, (2) defendant received a benefit, (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. *See Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008). "[I]n general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Interbank Investments, LLC. V. Eagle River Water & Sanitation Distr.*, 77 P.3d 814, 816 (Colo. Ct. App. 2003). To that extent, Defendant's contention is an accurate statement of the law. This position ignores, however, the fact that a plaintiff which is party to an express contract can nonetheless bring an unjust enrichment claim when it "will have no right under an enforceable contract." *Id.*; *see also Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 447-48 (Colo. 2000).

While there is an express contract between R.E. Monks and the TRAA, Defendant has denied that Plaintiff's claim for the cost overruns is covered by such contract. (Motion at 8-12.) Thus, it is unclear at this stage of the proceedings if Plaintiff's claim can proceed under an breach on contract theory or an unjust enrichment theory. Until such course of action has been decided, the Court interprets Plaintiff to have brought these theories in the alternative, and Defendant's Motion to Dismiss Plaintiff's unjust enrichment claim is denied. *See Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1171 (D. Kan. 2006) (plaintiff's "unjust enrichment claim[] [is an] alternative[] to its claim for breach of written contract . . . [a]lternative claims are sanctioned by the Federal Rules of Civil Procedure, and [plaintiff's] alternative claims are adequately pled."); Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically . . . If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

**B.      Motion to Stay Discovery and Extension of Deadlines**

Defendant has also filed a Motion to Stay Discovery and Extension of Deadlines requesting the Court to stay discovery until Defendant's Motion to Dismiss has been decided. (ECF No. 34.) Given the Court's instant disposition of the Motion to Dismiss, Defendant's Motion to Stay Discovery and Extension of Deadlines is now moot, and will be denied on that basis.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Dismiss (ECF No. 6) is DENIED; and

2. Defendant's Motion to Stay Discovery and Extension of Deadlines (ECF No. 34) is DENIED AS MOOT.

Dated this 2nd day of May, 2012.

BY THE COURT:

William J. Martínez
United States District Judge